IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THE STATE OF ILLINOIS, ex rel. Mark Lavery, <br><br> *Plaintiff-Relator*, <br><br> v. <br><br> NORTH AMERICAN DERIVATIVES EXCHANGE INC., d/b/a CRYPTO.COM DERIVATIVES NORTH AMERICA, <br><br> *Defendant*. | Case No. |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant North American Derivatives Exchange, Inc. d/b/a Crypto.com | Derivatives North America ("CDNA") removes this case from the Circuit Court of Cook County, Illinois to this Court by filing this Notice of Removal and respectfully states as follows:

1.  On January 14, 2025, Plaintiff-Relator The State of Illinois, ex rel. Mark Lavery ("Relator") commenced a civil action by filing under seal a Complaint in the Circuit Court of Cook County, Illinois against CDNA, captioned *The State of Illinois, ex rel. Mark Lavery v. North American Derivatives Exchange Inc., using assumed name Crypto.com Derivatives North America*, No. 2025L000545 (hereinafter the "State Court Action"). The State Court Action is pending in Illinois state court.

2.  On August 7, 2025, CDNA was served with a copy of the Summons and Complaint in the State Court Action. Thus, this Notice of Removal is timely filed within 30 days of service of the Summons and Complaint.

1

3. Copies of the Summons and Complaint are attached as <u>Exhibit A</u>, and, together, constitute all process, pleadings, and orders served on CDNA in the Civil Action to date.

4. CDNA has made no appearance in the Circuit Court of Cook County, Illinois in the State Court Action.

5. This action is removable under 28 U.S.C. § 1441(a), which allows removal of any action over which the federal district courts have original jurisdiction.

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Relator's Illinois False Claims Act claim requires the adjudication of federal-law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)). The Supreme Court has held that when these factors are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

7. In the Complaint, Relator brings a claim under the Illinois False Claims Act, 740 ILCS 175/1 *et seq*. Ex. A ¶ 1. Relator purports to bring a "Reverse False Claim" that requires a relator to plead that "the defendant (i) had an obligation to pay or transmit money to the State, (ii) concealed or avoided that obligation, and (iii) acted knowingly." Ex. A ¶¶ 26–27 (citing 740 ILCS 175/3(a)(1)(G)). Relator contends that CDNA's "obligation" to pay money to the state stems from the Illinois Sports Wagering Act that requires obtaining a license to offer sports wagering products in the state. Ex. A ¶ 28 (citing ILCS 45/25-20, 45).

8. CDNA is a Designated Contract Market ("DCM") regulated by the Commodity Futures Trading Commission ("CFTC"). As a DCM, CDNA lists for trading in a national derivatives market derivatives products regulated by the CFTC pursuant to the Commodity Exchange Act ("CEA"). CDNA has, in accordance with the procedures for listing such products and subject to CFTC oversight, listed for trading event contracts that reference the outcomes of live sports events ("Sports Event Contracts").

9. Relator alleges that CDNA has "disguise[d] and misclassif[ied]" its Sports Event Contracts as "financial products" regulated under the CEA and CFTC regulations instead of sports wagering under Illinois law, thus "intentionally misrepresent[ing] them as financial products to evade obligation to pay" a "licensing fee" to the Illinois Gaming Board and "gambling taxes mandated under Illinois law." Ex. A ¶¶ 10–12. Relator bases his scienter allegations on the existence of a 2012 order from the CFTC prohibiting the listing of a completely different class of event contracts—ones that reference the outcome of political events. Ex. A ¶¶ 15–18; *see In re the Self-Certification by N. Am. Derivatives Exch., Inc., of Pol. Event Derivatives Contracts and Related Rule Amends. under Part 40 of the Reguls. of the CFTC*, Order Prohibiting the Listing or Trading of Pol. Event Contracts (CFTC Apr. 2, 2012) (available at https://www.cftc.gov/sites/default/files/stellent/groups/public/@rulesandproducts/documents/ifdocs/nadexorder040212.pdf). Thus, by his allegations on the face of the Complaint, Relator's claim would require him to prove that the Sports Event Contracts are *not* what CDNA allegedly represents them to be—financial products subject to CFTC regulation.

10. The deception that Relator alleges is, at its heart, the assertion that CDNA has misrepresented the regulatory status of the Sports Event Contracts under federal law. Relator specifically identifies CDNA's alleged misrepresentations of CDNA's products as "part of the

CDNA scheme" of avoidance on which his claims are premised. Ex. A ¶ 12. Those allegations necessarily put front and center the question of whether CDNA is in compliance with federal law. If it is, Relator's allegations are incorrect and his claim fails.

11. To prove his claim, Relator must show both that the Sports Event Contracts were not, in fact, financial products under federal law *and* that CDNA's interpretation of federal law as applied to Sports Event Contracts was knowingly or recklessly incorrect. The proof of Relator's claim can be answered only by reference to the CEA and CFTC regulations. Specifically, federal law and regulation governs the registration of DCMs like CDNA, defines event contracts, and sets forth the rules and requirements for their trading. *See* 7 U.S.C. § 7 (setting forth requirements for DCMs); 7 U.S.C. § 1a(19)(iv) (defining "excluded commodity"); 7 U.S.C. § 1a(47)(A)(ii), (iv), (vi) (defining "swaps"); 7 U.S.C. § 7a-2 (setting forth certification process and "Special Rule" for CFTC review of event contracts); 17 C.F.R. § 38.3 (setting forth designation procedure and mandating compliance with "Core Principles" for DCMs); 17 C.F.R. 40.11 (providing for CFTC review of event contracts).

12. Relator himself seems to recognize the role the CFTC plays in determining the status of financial products like Sports Event Contracts by referencing the 2012 CFTC Order. Ex. A ¶ 17. But his allegations otherwise ignore the very federal regulatory scheme that governs the question of whether CDNA knowingly or recklessly mischaracterized Sports Event Contracts as federally regulated financial products. This "artful plead[ing]" does not change the fact that his claims require a court to reckon with federal law. *See Citadel Secs. LLC v. Chi. Bd. Options Exch., Inc.*, 2017 WL 118419, at *3 (N.D. Ill. Jan. 12, 2017) (finding that a court may uphold removal when "a plaintiff has 'artfully pleaded' to omit necessary federal questions.") (citation omitted).

13. While there are other deficiencies with Relator's claim, if the Court were to reach the merits, then the outcome of this case would turn almost exclusively on questions of federal law. The appropriate classification of Sports Event Contracts is a substantial issue that is actually disputed on the face of the Complaint. "The relevant sense of substantiality is . . . 'the importance of the issue to the federal system as a whole.'" *Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 674 (7th Cir. 2020) (quoting *Gunn*, 568 U.S. at 260). In fact, a federal court has already considered the very same issue considered in the 2012 CFTC order that serves as the basis for Relator's scienter allegations. *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 2024 WL 4164684 (D.D.C. Sept. 12, 2024). In that case, the United States District Court for the District of Columbia invalidated a CFTC order prohibiting the listing of political events contracts on a DCM with reasoning that would apply equally to the 2012 CFTC order. *Id.* at *7–12. Federal courts in three circuits—including two cases on appeal in the Third and Fourth Circuits—are right now considering related issues of whether the CEA preempts state gaming law as applied to trading on DCMs of event contracts that reference the outcome of sports events. *See KalshiEX LLC v. Flaherty*, No. 25-01922 (3d Cir.); *KalshiEx v. Martin, et al.*, No. 25-1892 (4th Cir.); *KalshiEx LLC v. Martin*, 2025 WL 2194908 (D. Md. Aug. 1, 2025); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *KalshiEX, LLC v. Hendrick*, 2025 WL 1073495 (D. Nev. Apr. 9, 2025); *see also* Compl. for Permanent Inj. and Declaratory Relief, *N. Am. Derivatives Exch., Inc. v. Martin*, No. 25-cv-01285 (D. MD. Apr. 21, 2025); Compl. for Permanent Inj. and Declaratory Relief, *N. Am. Derivatives Exch., Inc. v. Hendrick*, No. 25-cv-00978 (D. Nev. June 3, 2025). The federal significance of the issue is heightened, not diminished, by the fact that the Relator here attempts to cabin his claim that trading of Sports Events Contracts on CDNA is subject to the jurisdiction of state gaming regulators in terms of state law.

14. Further, removal would not upset the federal-state balance approved by Congress. To the contrary, it would give effect to Congress's intentional apportionment of the regulation of derivatives like Sports Event Contracts to the federal government. *See* 7 U.S.C. § 2(a)(1)(A) (vesting in the CFTC "exclusive jurisdiction" over derivatives traded on federal exchanges). As the Seventh Circuit has recognized, the CEA was passed in part due to Congressional concern that the states "might step in to regulate futures markets themselves," thus "subject[ing] the national futures trading apparatus to conflicting regulatory demands." *Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147, 1156 (7th Cir. 1992) (citing *Commodity Futures Trading Commission Act: Hearings Before the Senate Committee on Agriculture & Forestry*, 93d Cong., 2d Sess. 685 (1974) (statement of Sen. Clark)). Congress enacted the CEA to establish "a comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355–56, 386 (1982) (quoting H.R. Rep. No. 93–975, p. 1 (1974)). A federal court considering the applicability of federal law to Sports Event Contracts in the context of Relator's claims is entirely consistent with the statutory balance prescribed by Congress.

15. In accordance with 28 U.S.C. § 1441(a), venue lies with this Court, as the State Court Action is pending in Cook County, Illinois, which is within this judicial district and division.

16. CDNA will provide Relator with written notice of this filing and will promptly file a true and correct copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois. The Notice of Filing of Notice of Removal to be filed with the Circuit Court of Cook County, Illinois is attached as <u>Exhibit B</u>.

WHEREFORE, Defendant CDNA files this Notice of Removal and respectfully requests that this matter be removed to this Court from the Circuit Court of Cook County, Illinois and that this Court assume full jurisdiction over this action for all further proceedings.

Dated: September 8, 2025.  Respectfully submitted,

/s/ *Patrick M. Smith*
Patrick M. Smith (Illinois Bar No. 41832)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
310-788-4444
patrick.smith@katten.com

/s/ *Nowell D. Bamberger*
Nowell D. Bamberger (*pro hac vice forthcoming*)
Matthew C. Solomon (*pro hac vice forthcoming*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave. NW
Washington, DC 20037
202-974-1500
nbamberger@cgsh.com
msolomon@cgsh.com

*Attorneys for North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America*